UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTONIO PEREZ,

          Plaintiff,

    v.

S. MATIS,

          Defendant.

No.  2:14-cv-2077 GEB DB P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983.  Plaintiff alleges defendant Matis violated his First Amendment right of access to the courts when she refused his request for time in the law library.  Before the court are motions for summary judgment filed by plaintiff (ECF No. 24) and by defendant (ECF No. 27).  For the reasons set forth below, the undersigned recommends plaintiff's motion be denied and defendant's motion be granted.

**BACKGROUND**

I.     **Allegations in the Complaint**

    This case is proceeding on plaintiff's first amended complaint ("FAC") filed here on April 13, 2015.  (ECF No. 9)  Therein, plaintiff states that on February 18, 2014, he submitted a law library request form for priority library user status to defendant Matis, the librarian at High Desert State Prison ("HDSP").  With his request, plaintiff attached a copy of a letter from his appellate

1

attorney informing him that the California Court of Appeal had denied his appeal and that if he wished to file a petition for review with the California Supreme Court, it was due by February 23, 2014.  On February 20, 2014, defendant Matis denied plaintiff's request.  As a result, plaintiff "lost his right to a legal argument to the court of criminal case #B238303."  Plaintiff seeks damages "to obtain an attorney."

## II.    Procedural Background

Defendant answered the complaint on March 23, 2016.  (ECF No. 16.)  On March 29, 2016, the court issued a Discovery and Scheduling Order setting a discovery deadline of July 15, 2016 and a pretrial motion deadline of October 7, 2016.  (ECF No. 19.)

In a filing dated May 23, 2016, and filed here on May 31, plaintiff moved to compel defendant to respond to discovery.  (ECF No. 20.)  Plaintiff stated that he had not, at that time, received responses to the discovery propounded on April 11, 2016.  In her opposition, defendant stated that she did, in fact, respond to discovery in a timely manner.  (ECF No. 21.)  Pursuant to the court's Discovery and Scheduling Order, defendant's responses were due forty-five days after service.  Therefore, the responses were due on May 26, 2016.  Defendant stated that she served the responses on that date.  Plaintiff did not file a reply to defendant's opposition and has not pursued his motion to compel further.  The court therefore accepts defendant's explanation and finds plaintiff's motion to compel is moot.

On September 19, 2016, plaintiff filed his motion for summary judgment.  (ECF No. 24.)  On October 6, 2016, defendant filed her motion.  (ECF No. 27.)

## MOTIONS FOR SUMMARY JUDGMENT

While plaintiff's complaint alleges only that defendant Matis violated plaintiff's rights in denying the February 18, 2014 request for library access, in his opposition to defendant's summary judgment motion, plaintiff appears to also argue that Matis violated his rights when she granted plaintiff's January 25, 2014 request for library access but did not schedule library time for him until February 18, 2014.  Defendant argues she did not violate plaintiff's First Amendment rights and that she is entitled to qualified immunity.

////

1   **I.      Legal Standards**

2        **A.  Summary Judgment Standards under Rule 56**

3        Summary judgment is appropriate when the moving party "shows that there is no genuine

4   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

6   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627

7   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

8   moving party may accomplish this by "citing to particular parts of materials in the record,

9   including depositions, documents, electronically stored information, affidavits or declarations,

10  stipulations (including those made for purposes of the motion only), admissions, interrogatory

11  answers, or other materials" or by showing that such materials "do not establish the absence or

12  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

14       When the non-moving party bears the burden of proof at trial, "the moving party need

15  only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

16  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

17  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

18  against a party who fails to make a showing sufficient to establish the existence of an element

19  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

20  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

21  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

22  circumstance, summary judgment should be granted, "so long as whatever is before the district

23  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

24       If the moving party meets its initial responsibility, the burden then shifts to the opposing

25  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

26  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

27  existence of this factual dispute, the opposing party typically may not rely upon the allegations or

28  denials of its pleadings but is required to tender evidence of specific facts in the form of

affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B.   Other Applicable Legal Standards**

**1.   Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

////

4

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## 2.   Legal Standards for First Amendment Right of Access to the Courts

An inmate has a constitutionally protected right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 820–21 (1977).   However, there is no freestanding constitutional right to law library access for prisoners.  See Lewis v. Casey, 518 U.S. 343, 350–51 (1996). Instead, law library access serves as one means of ensuring the constitutional right of access to the courts.  See id. at 351. "[T]he Constitution does not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must regulate the time, manner, and place in which library facilities are used."  Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985).  A prisoner claiming that his right of access to the courts has been (or will be) violated due to inadequate library access must show that: (1) access was (or will be) so limited as to be unreasonable, and (2) the inadequate access caused (or will cause) actual injury.  Vandelft v.

Moses, 31 F.3d 794, 797 (9th Cir. 1994).   A prisoner cannot make conclusory declarations of

injury in alleging his access to the courts has been impeded.  That is, it is not enough for an

inmate to show some sort of denial of access and leave it at that.  He must also show "actual

injury" from the denial or delay of services.  The Supreme Court has described the "actual injury"

requirement:

> [T]he inmate ... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351.   If the underlying action is frivolous, a plaintiff cannot make the

necessary showing of actual injury.  See Christopher v. Harbury, 536 U.S. 403, 415 (2002).

### 3.   Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct

violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

(9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is

presented with a qualified immunity defense, the central questions for the court are: (1) whether

the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.

Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

sequence).  "Qualified immunity gives government officials breathing room to make reasonable

but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743

(2011).  The existence of triable issues of fact as to whether prison officials were deliberately

indifferent does not necessarily preclude qualified immunity.  Estate of Ford v. Ramirez–Palmer,

301 F.3d 1043, 1053 (9th Cir. 2002).

////

////

## II.     Material Facts

As required by Local Rule 260(a), defendant filed a Statement of Undisputed Facts ("DSUF").  (ECF No. 27-3.)  Plaintiff included numbered "undisputed facts" in his "Motion for Summary Judgment" ("Pl.'s Mot.").  (ECF No. 24.)  In addition, plaintiff filed a response ("Pl.'s Resp.") to the DSUF.  (ECF No. 28.)  The court has considered all filings by both parties and sets out below those material facts that are either undisputed or for which there is no genuine issue.

Plaintiff, Antonio Perez, is an inmate currently in custody at California Correction Center State Prison in Susanville, California.  At all times relevant to his claim, plaintiff was incarcerated at HDSP.  Defendant S. Matis was at all relevant times a librarian at HDSP.  (DSUF #1; Declaration of S. Matis (ECF No. 27-5) ¶ 1.)

### A.  Plaintiff's Prior Legal Proceedings

On March 23, 2011, in Los Angeles County Superior Court, case number TA112332, a jury convicted plaintiff of five counts of attempted pre-meditated murder, five counts of assault with a firearm, one count of shooting at an occupied vehicle, and one count of possession of a firearm by a felon with firearm and gang enhancements.  On or about November 6, 2014, attorney Melanie Dorian, on behalf of plaintiff, filed an appellate opening brief in the Court of Appeal, Second Appellate District, case number B238303.

Plaintiff's appeal sought reversal of two of the five conviction counts and of the premeditation and deliberation findings, and requested remand for resentencing.  Attorney Dorian asserted three arguments in the appeal: (1) insufficient evidence to sustain the attempted murder and assault with a firearm convictions in counts 1 and 2; (2) insufficient evidence to sustain the premeditation and deliberation findings in the shooting incidents; and (3) trial court error in consolidating one of the shooting incidents with the other two shooting incidents.  On January 14, 2014, in an unpublished opinion, the California Court of Appeal affirmed the trial court judgment.  (DSUF ##2-6.)

Attorney Dorian notified plaintiff of the Court of Appeal decision in a letter dated January 14, 2014.  Plaintiff received the letter approximately one week later, on or about January 21, 2014.  In her January 14 letter, Dorian told plaintiff that the Court of Appeal had rejected all of

the arguments she had asserted on his behalf.  She informed him that he could pursue additional remedies by filing: (1) a petition for rehearing to the Court of Appeal by January 28, 2014; (2) a petition for review to the California Supreme Court by February 23, 2014; and (3) various federal habeas pleadings.  (DSUF ##7-9.)

With respect to the petition for review to the California Supreme Court, Dorian told plaintiff that the court would grant review only in the following three circumstances: (1) where it appears necessary to secure uniformity of appellate decisions throughout the state, or to settle an important question of law; (2) where the Court of Appeal lacked jurisdiction over the case; or (3) where the Court of Appeal decided the case without a majority of the panel agreeing to the outcome.   Dorian told plaintiff that none of the three categories upon which the California Supreme Court grants review applied to his case and that filing a petition for review with the California Supreme Court would be "futile."  (DSUF ##11-12.)

Attorney Dorian also advised plaintiff about the substance of a petition for review.  She wrote: "[y]our petition should contain a brief summary of your case and the issue you want the court to review.  You must then state why the Supreme Court should hear your case (i.e., why the issue is of statewide importance, etc.), and you should attach a copy of the Court of Appeal opinion to the Petition."  Dorian enclosed a sample petition and informed plaintiff that he could not receive an extension so he should make sure the petition was received by the California Supreme Court on time.  (DSUF ##13-14.)

**B.  Prison Rules for Library Access**

Title 15 sections 3122 and 3123 set forth the rules pertaining to library access for prison institutions. Prisoners who wish to use the law library fall into two categories:  General Legal Users ("GLU") and Priority Legal Users ("PLU").  Inmates who have an established upcoming court deadline may apply for PLU status.  All inmates who are not on PLU status may access the library on GLU status.  To achieve PLU status, an inmate must complete and sign CDCR Form 2171, "Priority Legal User Request and Declaration."  In order to qualify, an inmate must demonstrate that he has a pending judicial deadline.  An established court deadline may be either a court imposed deadline for an active case or a deadline that is established by a statute or court

1    rule.  Inmates who apply for PLU status based on a court imposed deadline must show

2    documentation from the court to verify that deadline. Inmates who apply for PLU status based on

3    a statutory deadline or other rule must identify the legal rule that compels the deadline.  (DSUF

4    ##15-17.)

5           An inmate may request PLU status within 30 calendar days of the established deadline.

6    Once an inmate is given PLU status, he receives priority access to the library over other inmates.

7    PLU status also permits inmates four hours of library access per calendar week, two more hours

8    than what is permitted for GLU inmates.  At HDSP, the library calendar week runs Tuesday to

9    Saturday.  The library is generally closed on Sunday and Monday with the occasional exception.

10   Library sessions are two hours long and capped at eight inmates.  Under certain circumstances,

11   more than eight inmates may be scheduled for a session.  (DSUF ##18-20.)

12          Whether seeking PLU or GLU status, an inmate must also submit a Library Access

13   Request Form each time he seeks to visit the library so that the librarian knows to place an inmate

14   on the library schedule.   Once an inmate submits a PLU request, a librarian reviews it to

15   determine whether an inmate qualifies for PLU status.  PLU status cannot be granted without

16   receipt of the written request and satisfaction of all of the requirements pursuant to Title 15.  A

17   librarian has seven calendar days after receipt of the completed and signed Form 2171 to process

18   an inmate's application for PLU status and to make a decision.  If a PLU request is denied, the

19   staff member must explain the reason for the disapproval.  (DSUF ##22-23.)

20          **C.  Plaintiff's Library Requests and Access**

21          After plaintiff learned of the Court of Appeal's denial from attorney Dorian's January 14,

22   2014 letter, plaintiff went to the library to work on his petition for review to the California

23   Supreme Court in late January 2014.  On January 25, 2014, plaintiff submitted a Library Access

24   Request form.  On the form, plaintiff wrote down the wrong deadline date for the petition for

25   review.  Instead of identifying the deadline date as February 23, 2014, plaintiff listed it as being

26   three weeks later, on March 15, 2014.  Plaintiff's January 25, 2014 library request was approved

27   and plaintiff was next scheduled to visit the library on February 18, 2014.  (DSUF ##24-26.)

28   ////

Plaintiff went to the library on February 18, 2014.  Also on February 18, plaintiff submitted a Priority Library User Request and Declaration Form 2171 seeking permission to be designated as a PLU.  On the form, plaintiff indicated that he had an established court deadline of February 23, 2014.  When asked to identify the authority compelling the deadline, plaintiff wrote "Petition for Review."  Plaintiff attached a copy of the letter he had received from attorney Dorian to his PLU request.  In that letter, Dorian identified February 23, 2014 as the due date for plaintiff's petition for review to the California Supreme Court.  (DSUF ##27-28; Pl.'s Mot. (ECF No. 24) at 4.)

On February 20, 2014, defendant Matis denied plaintiff's PLU request. On the form, she indicated that the request had been denied because plaintiff failed to cite authority for the statute, court rule, or court order that triggered the court deadline.  (DSUF #29.)

Plaintiff next accessed the library on February 22, 2014.  Also on February 22, plaintiff submitted a Law Library Access Request Form seeking to be admitted under GLU status.  On the form, plaintiff did not indicate any deadline.  Plaintiff's February 22, 2014 request was granted and he was scheduled to return to the library on March 28, 2014.  (DSUF ##30, 31.)

Plaintiff next accessed the library on February 24, 2014.  (DSUF #32.)

**D.  Plaintiff's Further Legal Proceedings**

With respect to the petition for review to the California Supreme Court, plaintiff states that he was relying on the identical arguments that were asserted in the appeal.  Plaintiff was aware that he was not permitted to assert any new legal arguments in his submission to the California Supreme Court beyond those that were presented in the appeal.  (DSUF ##33, 34.)

In his deposition, plaintiff acknowledged that he received a sample petition for review to the California Supreme Court from attorney Dorian.  (Transcript of Plaintiff's July 11, 2016 Depo. ("Pl.'s Depo.") at 48, Ex. A to Oct. 6, 2016 Declaration of Janine Jeffery ("Jeffrey Decl.") (ECF No. 27-4 at 23).)  Plaintiff also understood that attorney Dorian felt that filing a petition for review in the California Supreme Court would be futile.  (Id. at 50 (ECF No. 27-4 at 25).)

Plaintiff did not file a petition for review in the California Supreme Court.  (DSUF #38.)

On July 30, 2014, plaintiff filed a habeas corpus petition in the United States District

1  Court for the Central District of California.  (Pl.'s Mot. (ECF No. 24) at 7.)  Plaintiff alleged nine

2  grounds for relief.  The court found that two of the grounds, claims 4 and 7, were not exhausted

3  because, after they were denied by the California Court of Appeal, plaintiff failed to petition the

4  California Supreme Court to review them.  (Id.; Exs. F and G to Pl.'s Mot. (ECF No. 24 at 32-

5  42).)  Plaintiff chose to dismiss those unexhausted claims and proceed on the remaining seven

6  habeas claims.  (Ex. G to Pl.'s Mot. (ECF No. 24 at 41-42).)

7  **III.    Analysis**

8      Plaintiff contends defendant Matis violated his right of access to the courts when she denied

9  his February 18, 2014 request for library time.  As a result of that denial, plaintiff contends he

10  was unable to file a petition for review with the California Supreme Court and was thus unable to

11  exhaust two claims he sought to raise in his federal habeas petition.  Based on his failure to

12  exhaust those two claims, he was forced to dismiss them from his federal petition.

13      Plaintiff also appears to argue that Matis's provision of library time over three weeks after he

14  made his January 25, 2014 request violated his First Amendment rights.  Plaintiff did not include

15  this latter argument in his FAC and, therefore, the court should not consider it on summary

16  judgment.  See Pickern v. Pier 1 Imports, Inc., 339 F. Supp. 2d 1081, 1088 (E.D. Cal. 2004).

17  Nonetheless, even if the court were to do so, plaintiff simply does not have an actionable claim.

18  Defendant Matis cannot be faulted for giving plaintiff access to the library 24 days after he

19  requested it when plaintiff failed to provide the correct court deadline on his request for library

20  time.  Plaintiff listed his court deadline as March 15, 2014.  Library access almost a month before

21  that deadline, on February 18, was not unreasonable.

22      With respect to plaintiff's February 18 request for library access, the court finds plaintiff has

23  failed to show he required library access in order to file his petition for review.  The only reason

24  plaintiff gives for requiring library access was to find "different case law" to support his claims.

25  (Pl.'s Resp. ¶ 34 (ECF No. 28 at 4).)  However, plaintiff had a copy of the appellate brief filed in

26  the Court of Appeal and a sample petition for review.  In order to exhaust his claims, plaintiff

27  only needed to re-copy them in the appropriate format and submit them to the California Supreme

28  Court.  While plaintiff may have wanted to do more, he was not prevented from filing a petition

1   for review by the denial of library access.

2        Moreover, plaintiff did, in fact, have access to the library on February 22, 2014.  While

3   plaintiff complains that this was too late, it was only four days after he made his request.  Further,

4   plaintiff could have mailed his petition for review to the California Supreme Court on Monday,

5   February 24, 2014.  When a court deadline falls on a weekend or holiday, that deadline is met

6   when a filing is made on the following work day.  Because February 23, 2014 was a Sunday,

7   plaintiff could have placed his filing in the mail on February 24, 2014 to make it timely.  See Cal.

8   Code Civ. Proc. § 12a(a) (when the last day to file a document falls on a Sunday, the period is

9   extended to the following day that is not a holiday); Cal. Ct. R. 8.25(b)(5) (A filing from an

10  inmate is deemed timely if it was "delivered to custodial officials for mailing within the period

11  for filing the document.")

12       It is also worth pointing out that despite knowing he had a February 23, 2014 deadline for

13  over a month, plaintiff did not seek PLU library access until February 18, just five days before

14  that deadline.  Defendant Matis cannot be faulted for failing to grant plaintiff immediate library

15  access when he waited until the eleventh-hour to request access.  See Houle v. Nevada, No. 2:09-

16  CV-02442-JCM, 2011 WL 1466620, at *3 (D. Nev. Apr. 18, 2011) ("Plaintiff cannot wait until

17  the eleventh hour to request law library access in a prison environment.")

18       In sum, the court finds there are no genuine issues of material fact in this case and that

19  defendant has shown she did not violate plaintiff's First Amendment right of access to the courts.

20  Because this court finds defendant should prevail on the merits of plaintiff's claim, the court need

21  not reach the issue of qualified immunity.

22       Accordingly, IT IS HEREBY ORDERED that plaintiff's May 31, 2016 motion to compel

23  (ECF No. 20) is denied as moot.

24       For the reasons set forth above, IT IS HEREBY RECOMMENDED that plaintiff's motion

25  for summary judgment (ECF No. 24) be denied and defendant's motion for summary judgment

26  (ECF No. 27) be granted.

27       These findings and recommendations will be submitted to the United States District Judge

28  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 13, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/pere2077.msj fr

13